UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jeelan Gauzner,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Butterfly Effects, LLC,<br><br>　　　　　Defendant. | No. 2:24-cv-02130-KJM-CSK<br><br>ORDER |

Defendant Butterfly Effects, LLC, moves to compel arbitration of class claims brought by its former employee, plaintiff Jeelan Gauzner. For the reasons stated below, the court **grants** the motion to compel arbitration and **dismisses** plaintiff's class action complaint.

**I.    BACKGROUND**

Defendant Butterfly Effects, LLC, a Florida limited liability company, contracts with interstate vendors and operates in twelve states to provide therapy services to individuals on the autism spectrum. Silver Decl. Ex. 4 ¶¶ 3–4 (Silver Decl.), ECF No. 6-2. From approximately August 2021 until May 2023, plaintiff Jeelan Gauzner worked for the defendant in California as a Registered Behavioral Therapist. Opp'n, Gauzner Decl. Attach. 2 ¶ 2 (Gauzner Decl.), ECF No. 10-2. She alleges defendant did not pay her for overtime, meal and rest period premiums, and did not reimburse her for business expenses, among other similar claims, in violation of California

1

1  law.  *See* Notice Removal, Compl. Ex. 1 at 24 (Compl.), ECF No. 1.  She seeks to represent a
2  class of similarly situated employees.  *Id.*

3      Defendant asserts plaintiff agreed to arbitrate her claims in two separate and individually
4  sufficient arbitration agreements.  *See* Mem. P. & A. at 7 (Mot.), ECF No. 6-1; Reply at 13, ECF
5  No. 12.  Defendant contends both agreements waived plaintiff's right to litigate on behalf of a
6  class.  *See* Reply at 13.  In support of its motion, defendant submits the two arbitration
7  agreements and accompanying explanatory memoranda.  Mot., Ex. 1, ECF No. 6-2; Reply, Ex. B,
8  ECF No. 12-5.  In addition, defendant requests the court take judicial notice of the JAMS[1] official
9  Arbitration Rules & Procedures, effective June 1, 2021, and a screenshot of the JAMS website.
10 Req. Judicial Notice (Sept. 19, 2024), ECF No. 7.  The court concludes these documents are not
11 relevant to the issues raised in this order, and therefore declines to take judicial notice of the
12 documents and webpage screenshot.

13     Defendant asserts plaintiff first agreed to arbitrate her claims in August 2021 when she
14 signed an arbitration agreement through an online onboarding portal.  Mot. at 7.  Plaintiff denies
15 signing this agreement and asserts the signature is not her own, but the signature of a human
16 resources employee who improperly accessed her online account.  Opp'n at 1–2, ECF No. 10.  In
17 support of her opposition, plaintiff simply submits—without providing full evidentiary support or
18 requesting judicial notice—Internet Protocol addresses (IP addresses), which she asserts show the
19 individual who signed the agreement did so in San Francisco, California, at approximately
20 8:46 p.m. PDT on August 21, 2021.  *Id.* at 2; Opp'n, Ex. B at 20–21, 38, 40, 71, ECF No. 10-1;
21 *see* Opp'n, Nguyen Decl. Attach. 1 ¶¶ 6–8 (Nguyen Decl.), ECF No. 10-1.  She further asserts the
22 signature could not be hers because she began work in Stockton, California, the next morning at
23 6:00 a.m.  Opp'n at 4.  In response, defendant requests judicial notice of a web page showing the
24 IP address apparently associated with plaintiff's electronic signature and the multiple possible
25 physical locations of its user.  Req. Judicial Notice (Oct. 15, 2024), ECF No. 13.  The court also
26 declines to take judicial notice of this web page.  Under Federal Rule of Evidence 201, courts

---

[1] Judicial Arbitration and Mediation Services, Inc.

may take notice of adjudicative facts if they are (1) generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Defendant's request does not meet the requirements of Rule 201.

Notwithstanding questions regarding the authenticity of the signature on the August 2021 arbitration agreement, defendant asserts plaintiff also agreed to arbitrate her claims in a second agreement in July 2022. Reply at 13. The first reference to the 2022 arbitration agreement actually appears in plaintiff's declaration supporting her opposition. *See* Gauzner Decl. ¶ 9. Defendant addressed and submitted the second arbitration agreement in response. *See* Reply at 13; Reply, Ex. B.

Defendant says it distributed the 2022 agreement via email to all non-exempt hourly employees, including plaintiff. Reply, Doughtie Supp. Decl. Attach. 5 ¶ 8, ECF No. 12-5. A memorandum for recipients' acknowledgement accompanied the agreement and in relevant part stated in bolded lettering:

> I understand that my continued employment with the Company constitutes acceptance of the terms of this memorandum and the Mutual Arbitration Agreement. I further understand that my employment will be governed by this memorandum and the Mutual Arbitration Agreement, regardless of whether I have signed this memorandum or the Mutual Arbitration Agreement.

Reply, Ex. B at 14 (emphasis omitted). The accompanying agreement provides a broad scope:

> 1.1 To the fullest extent allowed by applicable law, Employee and Employer both agree to exclusively and finally resolve by binding arbitration **any and all claims or controversies** . . .

*Id.* at 15 (emphasis in original). The agreement also addresses class action litigation in bolded lettering:

> 11.1 **Employee and Employer knowingly and voluntarily agree to bring any claims governed by this Agreement in an individual capacity and not as a plaintiff, class member, or representative in any purported class, representative, joint, collective or "mass" (related or group) action.**

*Id.* (emphasis in original).

In her declaration, plaintiff acknowledges she received the 2022 agreement and did not sign it. She also states she continued her employment with the defendant for multiple months

after receiving the 2022 agreement. Gauzner Decl. ¶¶ 8–9. At hearing, plaintiff conceded the 2022 agreement, if enforceable, would cover the dispute at issue.

Defendant moves to compel arbitration under the Federal Arbitration Act (FAA or the "Act") and to dismiss these proceedings. *See generally* Mot. The matter is fully briefed. *See* Opp'n; Reply. The court held a hearing on this matter on November 7, 2024. *See* Mins. Mot. Hr'g, ECF No. 17. Jamie Nguyen appeared for plaintiff and Tanner Hendershot appeared for defendant. *Id.* At hearing, plaintiff's counsel requested the court allow a surreply to address the introduction into the record and enforceability of the 2022 arbitration agreement. *Id.* Since hearing, plaintiff filed a surreply as the court permitted. Surreply, ECF No. 18.

## II.     EVIDENCE RAISED IN REPLY

In her surreply, plaintiff asserts the 2022 arbitration agreement constitutes improper new evidence, defendant waived its right to enforce the agreement, or in the alternative, the agreement cannot be introduced or enforced because of equitable estoppel. *See generally* Surreply.

Defendant in its reply asserted the 2022 agreement is not new evidence because it "addresse[s] the same set of facts supplied in opposition to the motion but provides the full context to selected recitation of facts." *Terrell v. Contra Costa Cnty.*, 232 F. App'x 626, 629, n.2 (9th Cir. 2007); *see* Reply at 13 n.3. Introducing evidence or arguments for the first time in reply can unfairly deprive the parties "the opportunity to address the new material." *Sweet v. Cardona*, 657 F. Supp. 3d 1260, 1275 (N.D. Cal. 2023). Although a district court can, in its discretion, consider new information and arguments presented for the first time in reply, *Provenz v. Miller*, 102 F.3d 1478, 1487 (9th Cir. 1996), the court "generally exercises this discretion when the new evidence appears to be a reasonable response to the opposition or upon giving the non-movant the opportunity to respond." *Sweet*, 657 F. Supp. at 1275 (collecting cases) (internal citations and quotations omitted). Here, the plaintiff volunteered information about the 2022 agreement in opposition to defendant's argument that she is compelled to arbitrate her claims. The existence of this agreement and defendant's provision of the agreement on reply addresses the facts supplied in opposition, and therefore cannot be considered "new evidence." Even if the evidence of the 2022 agreement is properly considered "new" evidence, the court now has given plaintiff an

4

1  opportunity to address the evidence at hearing and in her surreply.  The court considers the
2  enforceability of the 2022 agreement.

3       Plaintiff also contends that the defendant waived the right to enforce the 2022 agreement
4  by not introducing the agreement in support of its initial motion.  As with any other contract, the
5  right to arbitration can be waived.  *Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215,
6  1227 (E.D. Cal. 2015) (quoting *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921
7  (9th Cir. 2009)), *aff'd*, 659 F. App'x 402 (9th Cir. 2016).  Waiver of arbitration rights "is
8  disfavored because it is a contractual right, and thus any party arguing waiver of arbitration bears
9  a heavy burden of proof." *Id.* (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754,
10  758 (9th Cir. 1988).  Any examination of waiver "must be conducted in light of the strong federal
11  policy favoring enforcement of arbitration agreements." *Fisher v. A.G. Becker Paribas, Inc.*,
12  791 F.2d 691, 694 (9th Cir. 1986).  Plaintiff does not meet her heavy burden of proof here.
13  Applying California law—which is controlling when evaluating the enforceability of a contract,
14  *see Ingle*, 328 F.3d at 1170—courts have found waiver only in extreme circumstances.  Courts
15  have found waiver when a party fails to file a motion to compel arbitration, subsequently answers
16  a plaintiff's complaint and then initiates discovery. *See, e.g.*, *Quach v. California Com. Club,*
17  *Inc.*, 16 Cal. 5th 562, 570 (2024).  Here, the circumstances of defendant's belated introduction of
18  the 2022 agreement in the course of briefing on its motion to compel cannot constitute waiver
19  under California state law.

20       Plaintiff's assertion that equitable estoppel bars defendant from introducing or enforcing
21  the 2022 agreement is similarly unconvincing.  Under California law, applying the doctrine of
22  equitable estoppel to contractual disputes requires that:

> (1) the party to be estopped must be apprised of the facts; (2) he must intend that his
> conduct shall be acted upon, or must so act that the party asserting the estoppel had
> a right to believe it was so intended; (3) the other party must be ignorant of the true
> state of facts; and (4) he must rely upon the conduct to his injury.

27  *City of Long Beach v. Mansell*, 3 Cal. 3d 462, 489 (1970) (en banc).  In volunteering evidence
28  about the 2022 agreement to support her opposition, plaintiff cannot claim ignorance of the true
29  state of facts.  She should reasonably have expected defendant to respond to this assertion and be

5

prepared for them to submit the agreement in reply. The defendant is not equitably estopped from introducing or enforcing the 2022 agreement.

The court thus turns to consider the 2022 arbitration agreement and its validity below.

### III.	LEGAL STANDARD

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The language of the Act "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Like all contracts, arbitration agreements are subject to "generally applicable contract defenses" including "fraud, duress, or unconscionability." *Lim v. TForce Logs., LLC*, 8 F.4th 992, 999 (9th Cir. 2021).

The Act also allows district courts to hear motions to compel arbitration. 9 U.S.C. § 4. The court must normally answer two "gateway" questions in response to a motion to compel arbitration: (1) whether the parties agreed to arbitrate; and (2) whether their agreement covers the dispute plaintiff brings to the court. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). In evaluating the validity of an agreement to arbitrate, the court "should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

The moving party bears the burden to prove the "gateway" elements by a preponderance of the evidence. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (internal citations omitted). Applying the summary judgment standard in evaluating the motion, *see Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021), if there are genuine disputes of material fact, the court must "give the opposing party the benefit of all reasonable doubts and inferences." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 963 (9th Cir. 2007). If the party moving to compel carries her burden the Act, as interpreted by the Supreme Court, requires the court "to rigorously enforce agreements to arbitrate." *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217–18 (1985); *Johnson v. Walmart, Inc.*, 57 F.4th 677, 681 (9th Cir. 2023).

### A.     Consent Through Continued Employment

The FAA "requires a writing" to form a valid agreement to arbitrate but does not require parties to sign the writing. *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994). Under applicable California principles of contract law, "a party's acceptance [of a contract] may be implied in fact . . . even if the party never actually read the clause." *Pinnacle*, 55 Cal. 4th at 236 (citing *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420 (2000)). Under California law, "[m]utual assent, or consent, of the parties is essential to the existence of a contract." *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 943 (2022) (citations, marks and alterations omitted). Implied acceptance is a form of mutual assent in the case of arbitration agreements under California state law. *See, e.g.*, *Craig*, 84 Cal. App. 4th at 420. As such, agreements to arbitrate do not require a signature and employees who are on notice of an agreement's provisions can be deemed to accept its terms through continued employment. *See id*

In evaluating the formation of an arbitration agreement through continued employment, California courts evaluate multiple factors, including: (1) the employee's receipt of an express notice of the employer's arbitration agreement, *see id.* at 419; (2) a clear description of the arbitration policy provided to the employee, *see, e.g.*, *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 378 (2016); and (3) the employer does not require the employee's acceptance as a condition of continued employment, *see, e.g.*, *id.* at 203.

The Ninth Circuit has consistently upheld the enforceability of retroactive arbitration agreements. That is, an agreement to arbitrate can control claims and controversies that arose before the agreement was entered into by the parties. *Saucedo v. Experian Info. Sols., Inc.*, No. 22-01584, 2023 WL 4708015 at *6 (E.D. Cal. July 24, 2023) (collecting Ninth Circuit authority). Similarly, this Circuit has enforced arbitration agreements that waive an individual's right to engage in class action litigation, even when the terms are applied retroactively. *See, e.g.*, *Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013).

## IV. ANALYSIS

### A. A Valid Agreement to Arbitrate Exists

The primary issue in dispute here is whether plaintiff ever entered into an agreement to arbitrate claims related to her employment against defendant. As the party seeking to compel arbitration, defendant bears the burden of showing "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey*, 785 F.3d at 1323. Plaintiff asserts the defendant does not meet its burden because it does not offer sufficient or reliable evidence the signature on the August 2021 agreement is her own. *See generally*, Opp'n. Nevertheless, plaintiff acknowledges receipt of the 2022 agreement but states she did not sign that agreement. Gauzner Decl. ¶ 9. Defendant asserts plaintiff's lack of signature on the 2022 agreement does not invalidate the agreement under California law. Reply at 13. Instead, it says her receipt of the agreement and continued employment constitute acceptance of the agreement to arbitrate retroactive to any claims arising pre-hire, during employment and future claims arising post-separation. *Id.*

The court agrees with defendant and finds plaintiff is bound by the second, 2022 arbitration agreement. Therefore, whether defendant meets its burden to establish beyond genuine dispute that plaintiff—and not an overreaching human resources employee—electronically signed the 2021 agreement is irrelevant and the court need not address this aspect of plaintiff's argument. In finding plaintiff accepted the 2022 agreement through continued employment, the court assesses whether: (1) plaintiff received explicit notice of the agreement; (2) clear language in the distributed materials explained the terms of the arbitration policy; and (3) defendant impermissibly conditioned plaintiff's future employment on her acceptance of the agreement. *See, e.g., Craig*, 84 Cal. App. 4th at 420; *Harris*, 248 Cal. App. 4th at 378. There is no dispute plaintiff received the second agreement in July 2022 and voluntarily continued her employment until her termination in 2023. Gauzner Decl. ¶ 9; Reply at 13. In fact, as noted, plaintiff volunteered this information before the defendant raised the issue. Gauzner Decl. ¶ 9. A memorandum accompanied the arbitration agreement and detailed in clear language the relevant terms, including a description of the arbitration process and resources for employees who had

1 questions about the policy. Reply, Ex. B at 14. Plaintiff's continued employment for at least
2 three months after receiving the arbitration agreement, which was mandatory, constitutes implied-
3 in-fact acceptance of its terms under California law. *See Pinnacle*, 55 Cal. 4th at 236. Defendant
4 has met its burden of showing a valid agreement to arbitrate exists at least from 2022 on.

### B.     The Agreement Encompasses Plaintiff's Claims

Defendant also meets its burden of showing the arbitration agreement applies to the parties' dispute, which encompasses claims arising both before and after the parties entered into the 2022 agreement. The 2022 arbitration agreement covers "any claims that arose pre-hire (e.g., related to the interviewing/hiring process), during my employment (from the date that my employment initially began), and post-separation of employment." Reply, Ex. B at 14. Plaintiff's complaint asserts the alleged employment violations occurred throughout her employment with defendant, thereby including claims arising before and after parties entered into the 2022 arbitration agreement. Compl. ¶¶ 13, 23–30. Because the terms of the agreement are broad and retroactive to any pre-hire claims, plaintiff's claims arising under or connected to her employment during her tenure with defendant are covered. Plaintiff in fact does not dispute the arbitration agreement covers the dispute at issue. *See generally* Opp'n.

The agreement also permissibly waives plaintiff's right to bring her claims as part of, or on behalf of a class. Reply, Ex. B at 14; *see, e.g.*, *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018) (requiring "federal courts to enforce arbitration agreements according to their terms," including requirements for individualized proceedings).

Because there is a valid agreement to arbitrate and the agreement encompasses the dispute at issue, the court must enforce the arbitration agreement. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Because the agreement incorporates the JAMS Rules by reference, the court orders the arbitration of plaintiff's claims subject to those rules. Reply, Ex. B at 16; *see, e.g.*, *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069 (9th Cir. 2013).

### C. Staying or Dismissing the Action

Section 3 of the FAA provides once a court determines an issue is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had[.]" 9 U.S.C. § 3. However, the Ninth Circuit has held "that notwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014). At hearing, the parties agreed the claims may be dismissed if plaintiff is compelled to arbitrate.

Because all of plaintiff's claims are subject to arbitration, and the court discerns no reason to affect a stay, the court exercises its discretion to dismiss the action without prejudice. *See Villa v. Gruma Corp.*, No. 19-01721, 18 2020 WL 433098, at *2 (E.D. Cal. Jan. 28, 2020) (holding similarly and collecting cases).

### V. CONCLUSION

The court **grants** the motion to compel arbitration. This action is **dismissed without prejudice.**

Defendant's requests for judicial notice are **denied.**

The Court of Clerk is directed to **close** this case.

This order resolves ECF Nos. 6, 7, 13.

IT IS SO ORDERED.

DATED: February 5, 2025.

SENIOR UNITED STATES DISTRICT JUDGE